**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JACINTO LOPEZ-ESTEVEZ, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:14-CR-193-TCB-JSA |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL ACTION NO. |
| | : | 1:15-CV-651-TCB-JSA |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant Jacinto Lopez-Estevez has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. Movant seeks to challenge the constitutionality of his sentences, which were imposed on December 5, 2014, following a guilty plea entered in the Northern District of Georgia.

I.   Procedural History

On May 21, 2014, Movant was indicted by a federal grand jury in the Northern District of Georgia and charged with illegal re-entry into the United States after having been previously deported or removed, in violation of 8 U.S.C. §§ 1326(a) and (b)(2); willfully and knowingly using and attempting to use a United States passport issued by reason of a false statement, in violation of 18 U.S.C. § 1542; falsely and willfully representing himself to be a United States

citizen, in violation of 18 U.S.C. § 911; aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(2), and (c)(7); and knowingly and willfully making a materially false, fictitious and fraudulent statement to customs inspectors, in violation of 18 U.S.C. § 1001(a). (Doc. 7). On September 12, 2014, Movant entered into a negotiated guilty plea to the first two counts of the indictment, *i.e.*, illegal re-entry into the United States after having been previously deported or removed, and willfully and knowingly using and attempting to use a United States passport issued by reason of a false statement. (Doc. 27; Doc. 27, Attach. 1). The negotiated plea agreement contained a waiver of Movant's appellate and collateral rights ("appellate waiver"). (Doc. 27, Attach. 1 at 2). On December 5, 2014, the Court sentenced Movant to a total of 41 months of imprisonment. (Docs. 33, 34). Movant did not file a direct appeal of his convictions and sentences.

Movant filed the instant *pro se* § 2255 motion on March 2, 2015. (Doc. 37). In the motion, Movant raises the following grounds for relief:

(1) counsel provided ineffective assistance by:

    (a) allowing Movant to enter into the plea agreement;

    (b) failing to request early disposition of the Fast Track Program; and

2

    (c) failing to argue for a downward variance at sentencing; and

 (2) he did not knowingly and voluntarily accept the appellate waiver provision of the plea agreement.

(Doc. 1).

II. Standard of Review

  Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

   A.   Ineffective Assistance Of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510,

4

AO 72A
(Rev.8/82)

521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also*

5

*Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").

### 1. Allowing Movant To Enter Into The Plea Agreement

Movant's first claim – a conclusory statement that counsel was deficient by advising Movant to enter into the plea agreement – is without merit and unsupported by any facts in the record. Indeed, the negotiated plea agreement included dismissal of three of the five charges against Movant, a three-point reduction in Movant's offense level for acceptance of responsibility, and the Government's agreement that a sentence within the guidelines was reasonable. (Doc. 27, Attach. 1 at 5-6, 11).

Moreover, the evidence against Movant was overwhelming, including, but not limited to, the facts that: (1) on or about April 20, 2006, Movant submitted a passport application in Rhode Island presenting a birth certificate, social security number, and drivers' license of a deceased person but using his own photograph, claiming he was from Puerto Rico; (2) on or about May 7, 2014, Movant attempted to enter the United States from the Dominican Republic using that fraudulent

6

passport, was questioned by Customs Agents, and could not answer basic questions about Puerto Rico; (3) upon secondary inspection, Movant's fingerprints revealed that he was, in fact, Jacinto Lopez-Estevez, born in the Dominican Republic, previously convicted of a drug offense and removed from the United States; (4) Movant admitted to illegally re-entering the United States in 2005 after previously being deported and to fraudulently obtaining a passport and social security card; and (5) passport records revealed that he had traveled in and out of the United States many times since 2006, including to the Dominican Republic, Panama, and Mexico. (*See* Doc. 44, Attach. 1 at 9-13; PSR at 5-7).

Finally, the Court sentenced Movant to the lowest possible sentence within his guideline range of 41-51 months. Had Movant been convicted after a trial, he could have been convicted of all five counts against him, the Government would not have been bound by the guidelines, he likely would not have received a three-level reduction for acceptance of responsibility, his guideline range could have been substantially higher, he could have received a mandatory consecutive sentence for aggravated identity theft,[1] and the Court may not have sentenced him

---

[1] *See* 18 U.S.C. § 1028A(b)(2) (providing that a term of imprisonment imposed for aggravated identity theft must be consecutive).

7

at the low end of his new guideline range. Movant has therefore failed to demonstrate that counsel was ineffective for allowing him to enter into the plea agreement or that rejecting a plea would have been rational under the circumstances. Accordingly, Movant has failed to demonstrate that he is entitled to relief in connection with Ground 1(a).

### 2. Fast-Track Program

In Ground 1(b), Movant argues that he receive ineffective assistance of counsel because counsel failed to request that he be entered into the Fast-Track Program. On January 31, 2012, the Department of Justice issued a memorandum instructing all United States Attorneys to implement fast-track programs in their districts no later than March 1, 2012, in cases where a defendant enters a guilty plea to felony re-entry pursuant to a plea agreement. *See* Memorandum from James M. Cole for U.S. Attorneys (Jan. 31, 2012) ("Fast-Track Memo"), available at www.justice.gov/dag/fast-track-program.pdf. These programs are intended to conserve "significant and scarce government resources" by providing incentives to defendants to promptly plead guilty and to waive certain pretrial motions, direct appeal, and collateral attack rights in exchange for recognition that such

8

cooperation reflects an acceptance of responsibility beyond what the United States Sentencing Guidelines already provide. (Fast Track Memo at 1-2).

Movant's claim that counsel was ineffective for failing to request a "fast-track" sentence fails for several reasons. First, as conceded by Movant, it is the Government, not defense counsel, who must initiate the fast-track plea agreement process. *See* U.S.S.G. § 5K3.1 ("Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."); *United States v. Castrillo-Cuevas*, 291 F. App'x 960, 962 (11th Cir. 2008) ("The determination as to whether a defendant is eligible for the fast-track program, and therefore would receive a reduction in his sentence through a government motion for a downward departure, or a plea bargain, is a matter of prosecutorial discretion."); *United States v. Gomez-Herrera*, 523 F.3d 554, 561 (5th Cir. 2008) ("Fast track disposition is generally commenced by an offer from the government to enter into a plea agreement."); *United States v. Martinez-Trujillo*, 468 F.3d 1266, 1269 (10th Cir. 2006) ("The decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney."). Moreover, Movant has not demonstrated that he would

9

qualify for any such program, especially since he previously was convicted of a drug offense [*See* PSR at 9]. *See* Fast-Track Memo at 3. Thus, Movant has failed to demonstrate that his counsel's failure to argue for the "fast track" program fell below an objective standard of reasonableness or resulted in prejudice to him. *See, e.g., Campos-Bailon v. United States*, Nos. 1:12-cr-71-TCB; 1:13-cv-1770-TCB, 2013 WL 5492955, at *2 (N.D. Ga. Oct. 1, 2013) ("[W]here a defense attorney fails to ask for a fast-track sentence reduction his failure will not constitute ineffective assistance of counsel and will not be deemed to prejudice the defendant.") (Batten, J.); *accord Lona-Ramirez v. United States*, Nos. B-12-103, B-11-442, 2013 WL 2297260, at *5 (S.D. Tex. May 24, 2013). Accordingly, Movant is not entitled to relief with regard to Ground 1(b).

### 3. Failing To Argue For A Downward Variance At Sentencing

Movant contends in Ground 1(c) that counsel was ineffective for failing to argue for a sentence below the sentencing guidelines. It is not clear what sentencing reduction – other than under the Fast Track Program as discussed *supra* in Section III.B.2 – Movant claims that counsel should have sought. It is clear, however, that as part of the plea agreement both parties specifically agreed that they would *not* request any sentence outside of the guidelines range. (Doc. 27,

10

Attach. 1, at 11). The Court thus cannot surmise how counsel could have been ineffective by failing to breach the terms of the plea agreement. Moreover, counsel persuaded the Court to sentence Movant to the lowest possible sentence within Movant's guideline range, as well as to reverse itself and remove the term of supervised release the Court initially had imposed. (Doc. 44, Attach. 2 at 5, 7-8). Movant, therefore, has failed to demonstrate prejudice. Accordingly, Movant is not entitled to relief in connection with Ground 1(c).

      B.    <u>Movant Voluntarily Entered Into The Appellate Waiver.</u>

Other than the ineffective assistance of counsel claims discussed above, Movant does not appear to dispute that he entered into his plea knowingly and voluntarily. Regardless, Movant's sworn testimony during the plea colloquy – which carries a strong presumption of truth – indicates that he did, in fact, enter into his plea knowingly and voluntarily.

Indeed, during the plea hearing, Movant was provided with a court-appointed interpreter and swore that: he entered the plea through his own free will; nobody forced or threatened him to plead guilty; and no one promised him anything other than what was contained in the written plea agreement. (Doc. 44, Attach. 1 at 8). Movant has provided nothing whatsoever to this Court to

11

overcome the strong presumption of the veracity of his statements during the plea hearing, and he has failed to demonstrate that his plea was anything other than knowing and voluntary. *See, e.g., Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (finding the movant's allegations that his plea was not voluntary were in direct conflict with his statements during the plea colloquy, he produced no evidence to challenge the veracity of his sworn testimony, and his last minute self-serving statements therefore were insufficient to demonstrate that his plea was not entered into voluntarily).

Because Movant knowingly and voluntarily entered into the plea agreement containing the appellate waiver, that appellate waiver is valid and enforceable. *See United States v. Santiesteban*, 587 F. App'x 548, 551 (11th Cir. 2014); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011); *United States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted). In order to prevail in an argument to enforce a waiver, the Government must show that either "(1) 'the

district court questioned the [movant]' about the waiver; or (2) the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). In this case, the Government has demonstrated both.

The appellate waiver contained in the Plea Agreement provides as follows:

### Limited Waiver of Appeal

25. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 27, Attach. 1 at 12).

The Court specifically questioned Movant about the appellate waiver, asking him if he understood that he was giving up his right to appeal and to file collateral relief, and Movant stated that he understood. (Doc. 44, Attach. 1 at 7-8). It is

13

therefore clear from the record that Movant understood the significance of the appellate waiver, and he has not produced any evidence to challenge the veracity of his sworn testimony. Consequently, Movant's appellate waiver is valid and enforceable. *See United States v. Alers*, 518 F. App'x 721, 721 (11th Cir. 2013) ("The sentence appeal waiver is enforceable, as the district court specifically questioned him about the waiver during his plea colloquy[.]"; *United States v. Steele*, 168 F. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the waiver provision); *United States v. Montes*, 151 F. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and voluntarily waiving his right to appeal his sentence); *United States v. Bushert*, 997 F2d 1343, 1350-51 (11th Cir. 1993) ("One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'") (citations omitted); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (finding appellate waiver enforceable where the court expressly questioned movant about the specifics of the waiver and determined that he had entered into the written plea agreement, which included the waiver, freely and voluntarily, and where "[t]he

14

plain language of the agreement informed [Movant] that he was waiving a collateral attack on his sentence."). *See also United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (stating that a waiver is valid if the Government shows that either: "(1) the district court specifically questioned the [movant] about the waiver; or (2) the record makes clear that the [movant] otherwise understood the full significance of the waiver.").[2]

IV.  Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Jacinto Lopez-Estevez's motion to vacate sentence [Doc. 37] be **DENIED**.

V.  Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the

---

[2] Since the Government did not argue that the appellate waiver barred any of Movant's claims, this Court does not discuss that issue.

denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are without merit. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

16

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 20th day of August, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE